**KENNETH REYNOLDS JONES**                                    **PLAINTIFF**

**VS.**                                    **CIVIL ACTION NO. 1:08cv1318-HSO-JMR**

**CITY OF PICAYUNE, MISSISSIPPI, et al.**                                    **DEFENDANT**S

---

## REPORT AND RECOMMENDATION:

This matter is before the Court pursuant to a Motion [57-1] for Summary Judgement filed on behalf of Defendants City of Picayune, Mississippi; Michael Odom; Jim Luke; Holly Krantz and Daniel Davis (collectively hereinafter "Defendants") on March 23, 2010.   Accompanying Defendants' Motion is a Memorandum [58-1] in Support thereof.  Plaintiff filed a Response [59-1] in Opposition on March 29, 2010.  Thereafter, Defendants filed a Reply [60-1] in Support on March 30, 2010, to which Plaintiff filed a Reply [61-1] in Opposition.  The Court being fully advised in the premises, and after carefully considering the pleadings filed as a matter of record, along with the applicable law, recommends that Defendants' Motion for Summary Judgement be granted and Plaintiff's Complaint be dismissed with prejudice.

## FACTS:

On August 13, 2008, several members of the Picayune Police Department conducted an investigation of a house trailer in Picayune believed to be involved in illegal narcotic activity. (*See* Ex. "A" Attach. Defs.' Mot. [57-2] Summ. J.) A confidential informant was wired and supplied with five (5) documented $20.00 bills to purchase crack cocaine. *Id.*  The CI made contact with the residents of the house trailer who then called Plaintiff, Kenneth Reynolds Jones, and ordered crack cocaine. *Id.*  A short time later, Defendant Odom and Defendant Clark, who were conducting

surveillance, witnessed Plaintiff drive into the driveway of the house trailer in a green Chevrolet truck. *Id.* Defendant Odom and Defendant Clark witnessed Plaintiff make a hand-to-hand transaction with the resident of the house trailer and then pull out of the driveway. *Id.*

Defendants Odom and Clark followed Plaintiff and attempted to make a traffic stop. *Id.* Plaintiff was seen throwing what was later discovered to be the five (5) marked $20.00 bills out of the passenger window. *Id.* Plaintiff eventually stopped, and Defendants Odom and Clark, along with Defendant Krantz and Detective Jeremy Magri - who were also conducting surveillance - approached Plaintiff's vehicle. *Id.* As they approached, Plaintiff was seen chewing and attempting to swallow what appeared to be crack cocaine. *Id.* The officers ordered Plaintiff to exit the truck and spit out the cocaine, however, Plaintiff refused. *Id.* The officers then attempted to remove Plaintiff from the truck, however, again, Plaintiff refused and he began to struggle and fight with the officers and resist arrest. *Id.* Defendants contend that Plaintiff gripped the steering wheel of the truck with both hands and refused to adhere to any of the officers' instructions. (Defs.' Mem. [58-1] 3.) Defendants assert that Plaintiff is a very large man (six feet tall and 280 pounds) and had to be wrestled out of the truck onto the ground. *Id.* After a brief struggle, Plaintiff finally spit out a plastic bag of crack cocaine and he was subsequently arrested. (*See* Ex. "A" Attach. Defs.' Mot. [57-2] Summ. J.)

Plaintiff was transported to the Picayune Police Station where he complained about his right eye, face, and right elbow. (*See* Ex. "G" Attach. Defs.' Mot. [57-8] Summ. J.) The following day Plaintiff was taken to the Manna Medical Clinic to see Dr. Bolton. *Id.* Dr. Bolton prescribed Plaintiff 7.5mg tablets of Mobic to be taken twice daily and referred him to Dr. Lori Blackmer to have his eye checked out. *Id.* Dr. Blackmer administered eye drops and prescribed the same and informed Sergeant Gremillion that the redness in Plaintiff's eye should clear in two (2) weeks. *Id.*

Plaintiff was charged with Sale of a Controlled Substance, Obstruction of Justice, Resisting

Arrest, Possession of a Controlled Substance With Intent, and Conspiracy. (*See* Ex. "A" Attach. Defs.'Mot. [57-2] Summ. J.)  He pled guilty to Sale of a Controlled Substance and Resisting Arrest on March 2, 2009, and was sentenced to twenty-five (25) years in the custody of the Mississippi Department of Corrections with ten (10) years to be served on post-release supervision and six (6) months in the county jail with six (6) months suspended. (*See* Ex. "D" Attach. Defs.' Mot. [57-5] Summ. J.)  On October 10, 2008, Plaintiff, filed this *pro se* § 1983 action against the City of Picayune, Mississippi, and alleges that he suffered violations of his civil rights while he was being arrested on August 13, 2008, and while he was incarcerated as a pretrial detainee. (*See* Pl.'s Compl. [1-1].)  Plaintiff filed an amended complaint on December 24, 2008, adding Michael Odom, Jim Luke, Daniel Davis and Holly Krantz as defendants, claiming they subjected him to police brutality. (*See* Resp. [12-1] Order.)

Plaintiff contends the City of Picayune, Mississippi violated his constitutional rights by subjecting him to unsanitary conditions such as black mold, inadequate drinking water, cells without sunlight, and food being served on the floor.  Plaintiff also claims the City of Picayune, Mississippi violated his constitutional rights by denying him adequate medical care.  Lastly, Plaintiff contends the Defendants are liable for subjecting him to excessive force.  Specifically, Plaintiff asserts defendants Odom, Luke, Davis and Krantz violated his constitutional rights "by repeatedly and relentlessly beating [him]." (Pl.'s Am. Compl. [12-1] 2.)  The Defendants filed the present Motion for Summary Judgement claiming that Plaintiff's excessive force claim is barred by the Supreme Court's ruling in *Heck v. Humphrey*, 512 U.S. 477, 129 L. Ed. 2d 383, 114 S. Ct. 2364 (1994). Further, Defendant City of Picayune, Mississippi contends it is entitled to summary judgment on Plaintiff's remaining conditions of confinement claims and inadequate medical care claim.

## **STANDARD OF REVIEW:**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c). "The mere existence of a factual dispute does not by itself preclude the granting of summary judgment." *St. Amant v. Benoit*, 806 F.2d 1294, 1296-97 (5th Cir. 1987). "The requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). In other words, "[o]nly disputes over the facts that might effect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Furthermore, it is well settled in this circuit that "[b]are bones allegations are insufficient to withstand summary judgment because the opposing party must counter factual allegations by the moving party with specific, factual disputes; mere general allegations are not a sufficient response.'" *Howard v. City of Greenwood*, 783 F.2d 1311, 1315 (5th Cir. 1986) (*quoting Nicholas Acoustics Specialty Co. v. H & M Constr. Co.*, 695 F.2d 839, 845 (5th Cir. 1983)).

In considering a motion for summary judgment, the trial court views the evidence in the light most favorable to the party resisting the motion. *See Howard v. City of Greenwood*, 783 F.2d 1311, 1315 (5th Cir. 1986). To survive summary judgment, the non-movant must demonstrate the existence of a disputed issue of material fact. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48 (1986). To avoid the entry of summary judgment, the non-moving party must bring forth significant probative evidence demonstrating the existence of a triable issue of fact. *See Howard*, 783 F.2d at 1315.

42 U.S.C. § 1983 imposes liability upon any person who, acting under the color of state law, deprives another of federally protected rights. Therefore, section 1983 affords a remedy to those who

suffer, as a result of state action, deprivation of rights, privileges, or immunities secured by the Constitution and the Laws of the United States. *White v. Thomas*, 660 F. 2d 680,693 (5th Cir. 1981). A plaintiff cannot succeed merely by showing any deprivation of his rights. Section 1983 was intended to protect rights protected by federal law. *Karmi-Panahi v. Los Angles Police Dept.*, 839 F. 2d 621 (9th Cir. 1988); *Wright v. Collins*, 766 F.2d 841 (5th Cir. 1985).

Under 42 U.S.C. § 1983, liability may be imposed upon any person who, acting under the color of state law, deprives another of federally protected rights. It neither provides a general remedy for the alleged tort of state officials, nor opens the federal courthouse doors to relieve complaints of all who suffer injury at the hands of the state or its officers. Municipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001); *Monell v. Dep't of Soc. Services*, 436 U.S. 658, 694 (1978). *Monell* and later decisions reject municipal liability predicated on *respondeat superior*, because the text of section 1983 will not bear such reading. *Board of Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997). "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691.

A suit against a governmental agent or officer in his official capacity is a suit against the office that the employee holds and not against the actual employee. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). The three requirements for municipal liability outlined in *Piotrowski* are necessary in order to distinguish between individual violations by local employees and those that can be fairly attributed to conduct by the governmental entity itself. *See Piotrowski*, 237 F.3d at 578-79. The United States Supreme Court has clearly emphasized the necessity of an official policy as a predicate to recovery under a theory of municipal liability:

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell*, 436 U.S. at 695. Therefore, municipalities may not be held liable for acts of lower level employees, but may be held liable for constitutional violations committed pursuant to an official policy or custom. *Piotrowski*, 237 F.3d at 578.

In addition, not only must the plaintiff establish that a policy or custom of the municipality was the "moving force" behind the alleged violation of a constitutional right; he must also establish that the municipality was "deliberately indifferent" to the known consequences of the policy. *Id.* at 580; *See Lawson v. Dallas County*, 286 F.3d 257, 264 (5th Cir. 2002) ("[T]he municipality must maintain its official policy with deliberate indifference to a constitutionally protected right."). Deliberate indifference is an objective standard which encompasses "not only what the policymaker actually knew but what he should have known, given the facts and circumstances surrounding the official policy and its impact on the plaintiff's rights." *Lawson*, 286 F.3d at 264. The Fifth Circuit has noted that the plaintiff bears an "extremely heavy burden" in establishing both the municipality's deliberate indifference and a causal link between the alleged custom and the alleged constitutional violation. *Peters v. City of Biloxi*, 57 F.Supp. 2d 366, 376 (S.D. Miss. 1999). *See Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998); *Piotrowski*, 237 F.3d at 580 (stating that these two requirements "must not be diluted").

## <u>ANALYSIS:</u>

As a pretrial detainee, Plaintiff's constitutional rights flow from the Fourteenth Amendment Due Process Clause rather than the Eighth Amendment prohibition against cruel and unusual

punishment. Because they have not yet been convicted of the crime with which they are charged, pretrial detainees have a due process right not to be punished for that crime. *Bell v. Wolfish,* 441 U.S. 520, 535 (1979). The Supreme Court has stated the distinction between conditions that may be constitutionally imposed on convicted prisoners and conditions that may be imposed on pretrial detainees as follows:

> [T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law. **Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment.**

*Ingraham v. Wright,* 430 U.S. 651, 671-72 (1977) (emphasis added).

The appropriate standard to apply in analyzing constitutional challenges by pretrial detainees depends on whether the alleged unconstitutional conduct is a "condition of confinement"[1] or "episodic act or omission." *See Scott v. Moore,* 114 F.3d 51, 53 (5th Cir.1997) (en banc). The Fourteenth Amendment protects pretrial detainees from the imposition of conditions of confinement that constitute "punishment." *Hamilton*, 74 F.3d at 103. "Punishment" may be loosely defined as "a restriction or condition that is not reasonably related to a legitimate goal-if it is arbitrary or purposeless" *Bell*, 441 U.S. at 539. "Reasonably related" means that the restriction is (1) rationally related to a legitimate governmental purpose, and (2) not excessive in relation to that purpose. *Id.*

---

[1] The following were deemed to be conditions-of-confinement cases: *Murphy v. Walker,* 51 F.3d 714 (7th Cir.1995) (revocation of telephone, television, and cigarette privileges); *Collazo-Leon v. United States Bureau of Prisons,* 51 F.3d 315 (1st Cir.1995) (disciplinary segregation and denial of telephone and visitation privileges); *United States v. Millan,* 4 F.3d 1038 (2d Cir.1993) (length of pre-trial detention); *Hause v. Vaught,* 993 F.2d 1079 (4th Cir.1993) (restriction on mail privileges); *Brogsdale v. Barry,* 926 F.2d 1184 (D.C.Cir.1991) (overcrowding); *Lyons v. Powell,* 838 F.2d 28 (1st Cir.1988) (22-23-hour confinement and placement of mattress on floor); *Fredericks v. Huggins,* 711 F.2d 31 (4th Cir.1983) (policy of refusing detainees access to drugs for rehabilitation); *Lareau v. Manson,* 651 F.2d 96 (2d Cir.1981) (overcrowding).

at 561.  "[T]his test is deferential to jail rulemaking; it is in essence a rational basis test of the validity of jail rules." *Hare v. City of Corinth, Miss.,* 74 F.3d 633, 646 (5th Cir.1996).

When a pre-trial detainee alleges unconstitutional conduct which involves an episodic act or omission, the question is whether the state official acted with deliberate indifference to the inmate's constitutional rights. *Gibbs v. Grimmette,* 254 F.3d 545, 548 (5th Cir. 2001).  When the alleged constitutional violation is a particular act or omission by an individual that points to a derivative policy or custom of the municipality, the deliberate indifference standard is appropriate. *Scott,* 114 F.3d at 53-54.  To prove deliberate indifference, a pretrial detainee must show that the state official knew of and disregarded an excessive risk to the inmate's health or safety. *See Stewart v. Murphy,* 174 F.3d 530, 534 (5th Cir.1999).

The Court notes that Plaintiff's complaint alleges both unconstitutional conditions of confinement and episodic acts or omissions.  Therefore, the Court shall address the two categories of allegations individually.

**I.  Conditions of Confinement:**

Plaintiff alleges that he was subjected to unconstitutional conditions of confinement while he was incarcerated as a pretrial detainee within the Picayune City Jail ("PCJ"), and that Defendant City of Picayune, Mississippi is liable because it failed to remedy the situation.  Therefore, Plaintiff must establish a constitutional violation, and in addition must satisfy the three requirements necessary to impose municipal liability; that the PCJ had an official policy, practice or custom which would subject it to section 1983 liability; that the official policy is linked to the constitutional violation(s); and that the official policy reflects the PCJ's deliberate indifference to that injury. *See Lawson*, 286 F.3d at 263.

Plaintiff's allegations of unconstitutional conditions of confinement found in his complaint

are stated verbatim as follows, that "[he has] been exposed to unsanitary conditions, i.e., 1. exposure to black mold, 2. no sunlight entering cells due to all windows being covered with steel, 3. inadequate drinking water, 4. food being served on/off the floor..." (Pl.'s Compl. [1-1] 4.) However, other than the above mentioned allegations of unconstitutional conduct, Plaintiff presents no evidence that an official policy of the PCJ existed which violated his constitutional rights. The Court finds that such bare allegations, without more, are simply insufficient to support a claim that there existed a policy or custom which was the moving force behind any alleged constitutional violation. At best, Plaintiff's assertions amount to isolated instances of negligent conduct, which are insufficient to support the instant official capacity claim against the City of Picayune, Mississippi. Accordingly, Defendant City of Picayune, Mississippi is entitled to summary judgment on Plaintiff's claims as they relate to the conditions of the PCJ.

Additionally, the Court notes that Plaintiff's allegations of unconstitutional conditions of confinement do not rise to a violation of a clearly established constitutional right. As a pretrial detainee, Plaintiff has a constitutional right not to be punished for the crimes with which he has been charged. Therefore, to the extent that Plaintiff seeks to establish § 1983 liability, Plaintiff must offer proof that the conditions at the PCJ were imposed as a form of punishment. *Hamilton,* 74 F.3d at 103. A punitive purpose can be established by direct evidence of intent by detention facility officials to punish the pretrial detainee. *Bell,* 441 U.S. at 538. Alternatively, a punitive purpose may be inferred if the challenged condition is not reasonably related to a legitimate governmental objective. *Id.* at 539.

The Court finds that Plaintiff's allegations concerning the cleanliness of the PCJ do not rise to the level of constitutional violations. Plaintiff alleges that he was exposed to black mold and subjected to cells that did not allow sunlight to enter because the windows were covered with steel.

(*See* Pl.'s Compl. [1-1].) Despite these allegations, the Court notes that Plaintiff offers no evidence that the City of Picayune, Mississippi maintains the facility in an unsanitary fashion as a form of punishment. Also, Plaintiff fails to even allege that the City of Picayune, Mississippi was even aware of these alleged conditions. Although the facilities are not kept to Plaintiff's liking, "there is . . . a *de minimis* level of imposition with which the Constitution is not concerned." *Bell*, 441 U.S. at 539 (citing *Ingraham v. Wright*, 430 U.S. 651, 674 (1977)).

Plaintiff's allegations concerning the quality of the food and water served at the PCJ also fails to state a constitutional claim. Plaintiff's complaint is that there is no table on which to eat and thus the food is "served on/off the floor" and that the drinking water is inadequate. (*See* Pl.'s Compl. [1-1].) However, Plaintiff has offered no evidence or even made an allegation that the food and water at the PCJ is served in the alleged manner as a form of punishment. Plaintiff offers nothing more than the stated assertions in his complaint. Although the food and water is clearly not to Plaintiff's liking, again, "there is . . . a *de minimis* level of imposition with which the Constitution is not concerned." *Id*. These ambiguous allegations do not rise to actionable claims.

After a review of the evidence, the Court finds that Plaintiff has failed to create a genuine issue as to whether the conditions of his confinement were imposed as a form of punishment. The record is bereft of any facts tending to indicate that the City of Picayune, Mississippi or any PCJ official was actually aware of the allegedly unconstitutional conditions at the PCJ. Furthermore, Plaintiff has failed to allege an express intent on the part of the City of Picayune, Mississippi or any PCJ official to subject him to the allegedly unconstitutional conditions as a measure of punishment. Accordingly, the Court finds that Plaintiff's conditions of confinement claims do not rise to actionable claims and must be dismissed.

## II.  Episodic Act or Omission:

In addition to the allegations concerning the conditions of the PCJ, Plaintiff also alleges that Defendants are liable for various episodic acts and omissions which constituted deliberate indifference to his constitutional rights.

A.  Excessive Force:

Plaintiff's complaint also makes an allegation regarding an incident of violence involving City of Picayune, Mississippi police officers.  Specifically, Plaintiff alleges that "on 8-13-08... [he] was repeatedly beat by several officers, relentlessly." (Pl.'s Compl. [1-1]. 4.)  Plaintiff does not specify whether his excessive force claim is against Defendants in their individual capacities, their official capacities, or both, however, as discussed *infra*, Plaintiff's excessive force claim, regardless of whether it is brought against Defendants in their individual or official capacities, is barred by the Supreme Court's ruling in *Heck*.[2]

A prisoner cannot, by way of a § 1983 action, challenge the fact or duration of his confinement.  *See Preiser v. Rodriguez,* 411 U.S. 475, 487(1973).  To the extent that Plaintiff

_____

[2]Defendants contend Plaintiff's complaint only establishes an excessive force claim against Defendants in their official capacities.  In support, Defendants cite *Wells v. Brown*, 891 F.2d 591 (6th Cir. 1989), for the proposition that inmates seeking damages under section 1983 are required to clearly set forth in their pleadings whether they are suing state defendants in their individual capacities. (Defs.' Mem. [58-1] 4.)  However, Defendants' reliance on *Wells* is misplaced.  *Wells v. Brown* has been superseded by *Moore v. City of Harriman*, 272 F.3d 769, 772 (6th Cir. 2001) (en banc), in which a plurality of the Sixth Circuit rejected the view that *Wells* establishes "a *per se* rule requiring § 1983 plaintiffs to affirmatively plead 'individual capacity' in the complaint."  Rather, the plurality stated that, "while it is clearly preferable that plaintiffs explicitly state whether a defendant is sued in his or her 'individual capacity'... failure to do so is not fatal if the course of proceedings otherwise indicates that the defendant received sufficient notice." *Id.*  Judge Gilman concurred but expressed his view that *Wells* should have been explicitly overruled. *Id.* at 775 (Gilman, J., concurring).  In *Rodgers v. Banks*, 344 F.3d 587, 594 (6th Cir. 2003), the Sixth Circuit stated that "a plaintiff's failure to explicitly state 'individual capacity' in the complaint is not necessarily fatal to the lawsuit."  Furthermore, this Court has construed *pro se* complaints, that are lacking explicit capacity language, liberally and interpreted such complaints to allege claims against named state defendants in both their official and individual capacities. *See Ellison v. Broadus*, 2009 U.S. Dist. LEXIS 125944 (S.D. Miss., Dec. 8, 2009) *adopted by* 2010 U.S. Dist. LEXIS 24059 (citing *Williams v. Love*, 2006 U.S. Dist. LEXIS 36597, 2006 WL 1581908, *5 (S.D. Tex. 2006)).

seeks to recover damages for his alleged subjection to excessive force at the hands of police

officers, the Court finds that his § 1983 excessive force claim is barred by the Supreme Court's

ruling in *Heck*.  The Supreme Court held, in *Heck*, that:

> in order to recover damages for an allegedly unconstitutional
> conviction or imprisonment, or for other harm caused by actions
> whose unlawfulness would render a conviction or sentence invalid,
> a § 1983 plaintiff must prove that the conviction or sentence has been
> reversed on direct appeal, expunged by executive order, declared
> invalid by a state tribunal authorized to make such determination, or
> called into question by a federal court's issuance of a writ of habeas
> corpus, 28 U.S.C. § 2254.   <u>A claim for damages bearing that
> relationship to a conviction or sentence that has *not* been so
> invalidated is not cognizable under § 1983.</u>

*Heck*, 512 U.S. at 486-87. (emphasis added).  A plaintiff who has been convicted of a crime

cannot bring a § 1983 claim challenging the constitutionality of his conviction unless that

conviction has been reversed, expunged, declared invalid, or called into question by federal

habeas corpus. *Id.*  *Heck* bars claims for "unconstitutional conviction or imprisonment" as well as

claims "for other harm caused by actions whose unlawfulness would render a conviction or

sentence invalid." *Id.* at 486.  Thus, unless his conviction has been overturned, a plaintiff cannot

bring a section 1983 claim if prevailing on that claim would imply that his conviction was

invalid.

The Fifth Circuit has made clear that whether Plaintiff alleges excessive force *during* or

*simultaneous with* an arrest versus *after* an arrest results in distinct consequences under *Heck*.

For instance, in *Bush v. Strain*, 513 F.3d 492 (5th Cir. 2008), the plaintiff sought damages for

injuries that she sustained after she was arrested for simple battery and resisting arrest. *Id.* at 495.

The Court noted that there was conflicting evidence regarding whether the plaintiff had been

injured before or after her resistance ceased, and the Court ultimately found that the plaintiff had

adequately pleaded a claim for excessive force occurring after she was arrested. *Id.* at 499.

Conversely, in *DeLeon v. City of Corpus Christi*, 488 F.3d 649 (5th Cir. 2007), the Court

declined to consider the plaintiff's argument that his excessive force claims were separable from

his aggravated assault conviction. *Id.* at 656-57. The Court found that plaintiff's complaint did

not allege that his excessive force claims were separable from his aggravated assault on the

officer. *Id.* at 656. Instead, the complaint presented plaintiff's excessive force claim as a single

violent encounter through which the plaintiff was innocent. *Id.* at 656-57.

In the case *sub judice*, Plaintiff has not alleged that his claim of excessive force is

separable from his resisting arrest conviction. Rather, the evidence and pleadings before this

Court demonstrates that Plaintiff maintains that he did nothing wrong, that he did not resist

arrest. Plaintiff's complaint alleges that "on 8-13-08... [he] was repeatedly beat by several

officers, relentlessly." (Pl.'s Compl. [1-1] 4.) Plaintiff does not elaborate any further on his

claim. *Id.* During his deposition testimony, when Plaintiff was asked if he resisted the officers,

Plaintiff stated: "[n]o, I did not. Have never had a problem with the police officers in my life.

And the only reason why I pleaded guilty, because I was in front of all-white jury." (*See* Ex. "F"

Attach. Defs.' Mot. [57-7] Summ. J. 2.)

There is no alternative pleading or theory of recovery that would allow Plaintiff's claim

of excessive force to proceed without implying his conviction of resisting arrest to be invalid.

Instead, it is presented as a single encounter of excessive force. Plaintiff's claim is that he was

subjected to excessive force by being beaten by police officers on August 13, 2008. The only

evidence presented to this Court demonstrates that on August 13, 2008, Plaintiff was witnessed

selling crack cocaine and was subsequently stopped by police. (*See* Ex. "A" Attach. Defs.' Mot.

[57-2] Summ. J.) Upon approaching Plaintiff's vehicle, officers noticed Plaintiff attempting to

swallow a bag of crack cocaine. (*See* Exs. "A," "B" Attach. Defs.' Mot. [57-2] Summ. J.)  At that

time, the officers ordered Plaintiff to exit the vehicle and spit out the cocaine, however, Plaintiff

refused to comply with the officers' orders.[3] (*See* Ex. "A" Attach. Defs.' Mot. [57-2] Summ. J.)

After Plaintiff's refusal to exit the vehicle, the officers attempted to remove Plaintiff from his

truck in order to place him under arrest and coerce him to spit out the bag of cocaine, however,

Defendants contend that Plaintiff gripped the steering wheel with both hands and refused to

follow any of their instructions.[4] (*See* Ex. "A" Attach. Defs.' Mot. [57-2] Summ. J.; *see also*

Defs.' Mem. [58-1] 3.)  Defendants note that Plaintiff, a six foot tall 280 pound man, had to be

wrestled out of the vehicle. (*See* Ex. "A" Attach. Defs.' Mot. [57-2] Summ. J.; *see also* Defs.'

Mem. [58-1] 3.)  After a brief struggle, Plaintiff spit out a bag of crack cocaine and he was

thereafter taken into custody. (*See* Ex. "A" Attach. Defs.' Mot. [57-2] Summ. J.)  Plaintiff pled

guilty to resisting arrest and sale of a controlled substance on March 2, 2009. (*See* Ex. "D"

Attach. Defs.' Mot. [57-5] Summ. J.)

    A review of Plaintiff's pleadings and deposition testimony reveal that Plaintiff still

contends he's innocent.  Plaintiff makes assertions that his criminal trial counsel abandoned him,

that he only pled guilty because he was facing an all white jury, that video does not show him

---

[3]The Court notes that the officers initiated the traffic stop to arrest Plaintiff on the charge of selling crack cocaine pursuant to MISS. CODE ANN. § 41-29-139(a)(1), to which Plaintiff subsequently pled guilty and was sentenced. (*See* Exs. "A," "D" Attach. Defs.' Mot. [57-5] Summ. J.)

[4]The Mississippi Supreme Court has held that the police may exert physical force in overcoming resistence during an arrest, but they may only use that force which is reasonably necessary to respond to the resistance encountered. *City of Jackson v. Powell*, 917 So.2d 59, 71 (Miss. 2005).  Also, the Court notes that the Fifth Circuit has held that pinching a suspect's nose, holding his throat, and applying pressure to his jaw to retrieve evidence that the suspect is trying to swallow is a constitutionally acceptable practice. *Espinoza v. United States*, 278 F.2d 802 (5th Cir. 1960).  Recently, the Northern District of Mississippi has held that the use of a Taser in attempting to get a plaintiff to spit out a bag of cocaine was a reasonable application of force so as to save the plaintiff's life from cocaine overdose. *See Ellis v. City of Columbus*, 2009 WL 1663454 (N.D. Miss., June 15, 2009) (unpublished opinion).

selling crack cocaine, and that he is not guilty of resisting arrest. (*See* Pl.'s Resp. [59-1] Defs.'

Mot. Summ. J.; Pl.'s Reply [61-1]; Ex. "F" Attach. Defs.' Mot. [57-7] Summ. J.)  The Fifth

Circuit has reasoned, in an unpublished opinion:

> Arnold's claims are not that the police used excessive force after he
> stopped resisting arrest or even that the officers used excessive and unreasonable
> force to stop his resistance.  Instead, Arnold claims that he did nothing wrong, but
> was viciously attacked for no reason.  He provides no alternative pleading or theory
> or recovery... Arnold's claims are distinguishable from excessive force claims that
> survive *Heck*'s bar... Arnold's suit squarely challenges the factual determination
> that underlies his conviction for resisting an officer.  If Arnold prevails, he will
> have established that his criminal conviction lacks any basis.

*Arnold v. Slaughter*, 100 Fed.Appx. 321, 324 (5th Cir. 2004) (unpublished).  In the present case,

this Court can only conclude that Plaintiff's excessive force claim is inseparable from the rest.

Plaintiff's excessive force claim challenges the factual determination that underlies his

conviction for resisting arrest.  Therefore, the Court finds that a judgment in favor of Plaintiff

would imply the invalidity of his resisting arrest conviction, which has not been reversed,

expunged, declared invalid, or called into question by a federal habeas corpus proceeding. *Heck*,

512 U.S. at 486-87; *see also DeLeon v. City of Corpus Christi*, 488 F.3d 649 (5th Cir. 2007).

Thus, Plaintiff's excessive force claim is barred by *Heck*.

B.  Denial of Adequate Medical Treatment:

      In his Complaint, Plaintiff alleges that Defendant City of Picayune, Mississippi denied

him adequate medical care while incarcerated at the PCJ.  Plaintiff has not named any PCJ

official as being liable for his inadequate medical care claim.  Therefore, Plaintiff must establish

a constitutional violation, and in addition must satisfy the three requirements necessary to impose

municipal liability: that the PCJ had an official policy, practice or custom which would subject it

to section 1983 liability; that the official policy is linked to the constitutional violation(s); and

that the official policy reflects the PCJ's deliberate indifference to that injury.  *See Lawson*, 286 F.3d at 263.

Plaintiff claims that he was denied adequate medical care.  However, Plaintiff does not elaborate on this broad claim any further in his complaint or any pleadings filed before this Court.  Nevertheless, the Court notes that upon entering the PCJ, Plaintiff complained about his face, right elbow and right eye. (*See* Ex. "G" Attach. Defs.' Mot. [57-8] Summ. J.)  Plaintiff filled out a medical request form, and he was subsequently taken to see two (2) doctors who prescribed 7.5mg tablets of Mobic and eye drops. *Id.*  The doctors noted that Plaintiff did not have a serious injury and the redness in his eye should be clear in two (2) weeks. *Id.*  Furthermore, Plaintiff has not presented any medical requests that went unanswered.  Thus, Plaintiff's allegation concerning inadequate medical care is in total contradiction to the evidence before this Court. *Id.*  Other than the above mentioned allegation of inadequate medical care, Plaintiff presents no evidence that an official policy of the PCJ existed which violated his constitutional rights.  The Court finds that such a bare allegation, without more, is simply insufficient to support a claim that there existed a policy or custom which was the moving force behind any alleged constitutional violation.  At best, Plaintiff's assertion amounts to an isolated incident of negligent conduct, which, by itself, is insufficient to support the instant claim against Defendant City of Picayune, Mississippi.

The Court notes that Plaintiff has not named any PCJ official as being liable for his inadequate medical care claim, however, the Court finds that had Plaintiff named a PCJ official, he has failed to meet his burden of establishing deliberate indifference to a serious medical need and thus has not established a constitutional violation.  When an alleged constitutional violation for failure to provide adequate medical care stems from an episodic act or omission, the question

is whether a state official acted with deliberate indifference to the individual's constitutional rights. *Gibbs*, 254 F.3d at 548. In order to prove deliberate indifference to serious medical needs, and thus a constitutional violation, a prisoner must show that a state official knew of and disregarded an excessive risk to inmate health or safety. *See Stewart v. Murphy*, 174 F.3d 530, 534-35 (5th Cir. 1999).

Deliberate indifference is more than mere negligence in providing or failing to provide medical treatment. *See Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993); *Williams v. Treen*, 671 F.2d 892, 901 (5th Cir. 1982). The law is clear that unsuccessful medical treatment, mere negligence, neglect, nor medical malpractice gives rise to a section 1983 cause of action. *See Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). Furthermore, disagreement with medical treatment alone is insufficient to support a claim under section 1983. Rather, "the plaintiff must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would evince a wanton disregard for any serious medical needs.'" *Domino v. Tex. Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)(quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).

After reviewing the record, this Court finds that Plaintiff has failed to meet his burden of establishing that any PCJ official was deliberately indifferent to his serious medical needs. Plaintiff's only claim is that he was denied adequate medical care. However, after a thorough review of the record, the Court is unable to conclude that Plaintiff has created a genuine issue as to whether a PCJ official was deliberately indifferent to his serious medical needs. There is no evidence indicating that Plaintiff was ever denied any medical request, and certainly no evidence that any PCJ official was aware that Plaintiff was in need of treatment. Therefore, Plaintiff has not alleged sufficient facts to permit an inference that any PCJ official was aware of a serious

risk to Plaintiff's health. Furthermore, the evidence of record demonstrates that Plaintiff submitted one medical request complaining about his right eye, face, and right elbow following his arrest. (*See* Ex. "G" Attach. Defs.' Mot. [57-8] Summ. J.) Plaintiff was taken the following day to see Dr. Bolton at the Manna Clinic where he was prescribed an anti-inflammatory pain reliever and was referred to Dr. Blackmer to have his eye examined. *Id.* The next day, Dr. Blackmer noted that nothing was wrong with Plaintiff's eye and prescribed eye drops indicating that the redness in Plaintiff's eye would be gone in two (2) weeks. *Id.* There is no evidence before this Court of any other medical complaints or sick call requests submitted by Plaintiff. Furthermore, the evidence of record indicates that Plaintiff's one sick call request concerning his face, eye, and elbow was responded to and he was taken to see two (2) doctors. *Id.* Plaintiff has not alleged any facts that would show that a PCJ "official had subjective knowledge of a substantial risk of serious harm to [him] but responded with deliberate indifference to that risk." *Hare*, 74 F.3d at 650. At most, Plaintiff's allegation could be interpreted as a disagreement with his medical treatment received following his arrest, however, disagreement with medical treatment alone is insufficient to support a claim under section 1983. *See Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). This issue does not rise to an actionable claim.

## RECOMMENDATION:

After considering the evidence of record, the Court concludes that Plaintiff has failed to create a genuine issue as to whether the Defendants violated Plaintiff's constitutional rights during his incarceration as a pretrial detainee at the PCJ. Plaintiff has presented no evidence indicating that the alleged conditions of confinement were imposed by the Defendants for a punitive purpose. Further, Plaintiff's allegation that he was denied adequate medical care does not rise to the level of a constitutional violation. Finally, Plaintiff's claim that he was subjected to excessive force at the

hands of police officers is barred by *Heck*. Accordingly, the Court recommends that Defendants are entitled to summary judgment, and Plaintiff's excessive force claim should be dismissed with prejudice to its being asserted again until the *Heck* conditions are met and Plaintiff's remaining claims against Defendants should be dismissed with prejudice.

In accordance with the Rules of this Court, any party, within fourteen (14) days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the District Judge, the U.S. Magistrate Judge, and the opposing party. The District Judge at that time may accept, reject or modify in whole or in part, the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. Failure to timely file written objections to proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party, except on the grounds of plain error, from attacking on appeal unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United States Auto Ass'n*, 79 F.3d 1415, 1425 (5th Cir. 1996).

**SO ORDERED**, this the ___1st___ day of June, 2010.

_____s/ John M. Roper, Sr._____
CHIEF UNITED STATES MAGISTRATE JUDGE